UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

====================================

UNITED STATES OF AMERICA,

   -  against -

**NOTICE OF MOTION**
**FOR RECONSIDERATION**

24-cr-665 (LAP)

JARED SOLOMON,

                   Defendant.

====================================

SIRS:

      PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law, the prior submissions on the motion to dismiss (Dkt. Nos. 36, 38), and all proceedings herein, the defendant Jared Solomon, by and through his attorney Peter Toumbekis, Esq., will move this Court before the Honorable Loretta A. Preska, Senior United States District Judge, at the United States Courthouse, 500 Pearl Street, New York, New York, on a date and time to be set by the Court, for an Order:

1.    Reconsidering the Court's Memorandum and Order dated October 14, 2025 (Dkt. No. 39), which denied Defendant's motion to dismiss the indictment; and

3.    Granting such other and further relief as the Court deems just and proper.

Dated: Brookhaven, New York
       October 26, 2025

*The motion is denied (dkt. no. 42).*

SO ORDERED

*Loretta A. Preska*

LORETTA A. PRESKA
UNITED STATES DISTRICT JUDGE

*10/27/25*

Peter Toumbekis, Esq.
Attorney for the Defendant
281 Beaver Dam Road
Brookhaven, NY 11719

TO:   United States Attorney's Office
       AUSA Adam Margulies, by ECF

## TABLE OF CONTENTS

|  | Page |
|---|---|
| I. Preliminary Statement | 1 |
| II. Legal Standard for Reconsideration | 2 |
| III. Legal Standard for Review of a Rule 12 Motion to Dismiss Pre-Trial | 3 |
| IV. The Court Misapplied the Russell Doctrine: Controlling Constitutional Law, Not an Exception | 4 |
| V. "Tracking the Statute" Is Insufficient When the Statute Itself Omits Essential Element(s) | 6 |
| VI. Failure to State an Offense – Defective "To Wit" Clause | 7 |
| A. The "To Wit" Clause Omits Essential Elements of 18 U.S.C. § 1343 | 7 |
| B. "Scheme to Make False Statements" Is Not a "Scheme to Defraud" and Is Not a Crime | 8 |
| C. "To Obtain Money" Without Detail Fails to Allege a Cognizable Property Interest | 8 |
| D. "In Furtherance Of" Misstates the Required *Actus Reus* | 9 |
| E. Materiality Is Wholly Absent | 9 |
| F. Mens Rea Element Is Missing | 10 |
| G. Collective Impact – Jurisdictional Defects Requiring Dismissal With Prejudice | 10 |
| VII. The Court Improperly Relied on Materials Outside the Four Corners of the Indictment to Cure Deficiencies | 11 |
| VIII. The Court Misapplied the Continuing-Offense Doctrine | 13 |
| IX. Statute of Limitations Is Five (5) Years and Failure to Plead a Timely Act Renders the Indictment Time-Barred | 15 |
| X. Forfeiture Language Cannot Cure a Constitutionally Defective Indictment | 17 |
| XI. The Court Improperly Inferred Materiality and Intent Not Alleged in the Indictment | 19 |
| XII. The Court Overlooked Controlling and Binding Precedent from the Second Circuit and Supreme Court | 21 |
| XIII. Conclusion | 22 |

Case 1:24-cr-00665-LAP    Document 42    Filed 10/26/25    Page 3 of 27

# TABLE OF AUTHORITY

**Cases**

Carpenter v. United States, 484 U.S. 19 (1987) ............................................................8

Hamling v. United States, 418 U.S. 87 (1974) ............................................................ 5

Hutto v. Davis, 454 U.S. 370 (1982) ......................................................................... 21

Jones v. Coughlin, 45 F.3d 677 (2d Cir. 1995) .......................................................... 21

Kousisis v. United States, No. 23-909 (U.S. May 22, 2025) .................................. 9, 19

Libretti v. United States, 516 U.S. 29 (1995) ............................................................ 17

Neder v. United States, 527 U.S. 1 (1999) ........................................................ 8, 9, 19

Pereira v. United States, 347 U.S. 1 (1954) ................................................................ 9

Resendiz-Ponce v. United States, 549 U.S. 102 (2007) .............................................. 8

Russell v. United States, 369 U.S. 749 (1962) ....................................... 3–5, 7, 10–13, 17

Shrader v. CSX Transportation, Inc., 70 F.3d 255 (2d Cir. 1995) ..........................1–2

Toussie v. United States, 397 U.S. 112 (1970) ................................................... 13, 15

United States v. Aleynikov, 676 F.3d 71 (2d Cir. 2012) ...................................... 3, 10

United States v. Alfonso, 143 F.3d 772 (2d Cir. 1998) ................................. 3, 10–13

United States v. Bajakajian, 524 U.S. 321 (1998) ................................................... 17

United States v. Basciano, 763 F. Supp. 2d 303 (E.D.N.Y. 2011) .............................. 5

United States v. Ben Zvi, 242 F.3d 89 (2d Cir. 2001) ............................................. 14

United States v. Binday, 804 F.3d 558 (2d Cir. 2015) ............................................. 20

United States v. Cannistraro, 800 F. Supp. 30 (D.N.J. 1992), aff'd, 999 F.2d 1009 (3d Cir. 1993)...17

United States v. Carolla, 2003 WL 22938040 (2d Cir. Dec. 12, 2003) ...................... 14

United States v. Cherry, 330 F.3d 658 (4th Cir. 2003) ............................................ 17

United States v. Chastain, No. 23-7038 (2d Cir. July 31, 2025) .............................. 20

United States v. Crossley, 224 F.3d 847 (2d Cir. 2000) ........................................... 15

United States v. D'Amato, 39 F.3d 1249 (2d Cir. 1994) ............................................ 8

United States v. Diaz, 986 F.3d 202 (2d Cir. 2021) ................................................. 21

United States v. Grimm, 738 F.3d 498 (2d Cir. 2013) ....................................... 14–15

United States v. Hoey, 725 F. App'x 58 (2d Cir. 2018) ........................................... 15

United States v. Pierce, 224 F.3d 158 (2d Cir. 2000) ................................................ 9

United States v. Pirro, 212 F.3d 86 (2d Cir. 2000) ............................... 3–5, 7, 10, 12

United States v. Regan, 103 F.3d 1072 (2d Cir. 1997) ........................................ 8, 10

United States v. Rigas, 490 F.3d 208 (2d Cir. 2007) ............................................... 20

United States v. Rivlin, 2007 WL 4276712 (S.D.N.Y. Dec. 5, 2007) ........................ 17

United States v. Rutigliano, 790 F.3d 389 (2d Cir. 2015) ........................................ 15

United States v. Sampson, 898 F.3d 287 (2d Cir. 2018) ...................................... 3, 12

United States v. Silver, 864 F.3d 102 (2d Cir. 2017) ............................................... 16

United States v. Stavroulakis, 952 F.2d 686 (2d Cir. 1992) ............................... 4, 10

United States v. Stringer, 730 F.3d 120 (2d Cir. 2013) ..................................... 5, 8, 12

United States v. Sullivan, No. S102CR.1144 (BSJ), 2004 WL 253316 (S.D.N.Y. Feb. 10, 2004)...12

Virgin Atlantic Airways, Ltd. v. National Mediation Board, 956 F.2d 1245 (2d Cir. 1992) .....1–2

United States v. Yannotti, 541 F.3d 112 (2d Cir. 2008) ............................................. 5

Case 1:24-cr-00665-LAP    Document 42    Filed 10/26/25    Page 4 of 27

**Statutes and Rules**

18 U.S.C. § 1343 ................................................................... 7–10, 13–17, 19

18 U.S.C. § 3237(a) ....................................................................................... 15

18 U.S.C. § 3282(a) ........................................................................ 2, 13–17

Fed. R. Crim. P. 7(c)(1) ........................................................... 4, 9, 17, 19, 21

Fed. R. Crim. P. 12(b)(3)(B)(v) ................................................. 3, 10, 14, 22

Fed. R. Crim. P. 12(e) .................................................................................... 1

Fed. R. Crim. P. 32.2(a) ............................................................................... 17

Fed. R. Crim. P. 57(b) ................................................................... 1, 10, 22

Fed. R. Civ. P. 59(e) ...................................................................................... 1

S.D.N.Y. Local Rule 6.3 .......................................................................... 1–2

S.D.N.Y. Local Criminal Rule 49.1(d) ........................................................ 21

U.S. Const. amends. V, VI ........................................................ 3–5, 17, 19, 21

Case 1:24-cr-00665-LAP    Document 42    Filed 10/26/25    Page 5 of 27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
═══════════════════════════════════════════

UNITED STATES OF AMERICA,

**MEMORANDUM OF LAW**

- against -

24-cr-665 (LAP)

JARED SOLOMON,

Defendant.
═══════════════════════════════════════════

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION

### I.    PRELIMINARY STATEMENT

1.  Defendant Jared Solomon respectfully moves for reconsideration of this Court's October 14, 2025 Memorandum and Order denying his Motion to Dismiss the Indictment. Reconsideration is warranted under Federal Rule of Criminal Procedure 12(e), Local Civil Rule 6.3 (made applicable through Rule 57(b)), and Federal Rule of Civil Procedure 59(e) because the Court overlooked controlling Supreme Court and Second Circuit precedent and misapprehended material facts that, once properly applied, would compel dismissal of the Indictment. The Defendant seeks correction of legal errors consistent with the standards set forth in *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) and *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992).

### II.    LEGAL STANDARD FOR RECONSIDERATION

2.  Under S.D.N.Y. Local Rule 6.3, reconsideration is appropriate where the movant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." See *Virgin Atlantic Airways*, 956 F.2d at 1255. The Second Circuit has long recognized that reconsideration is warranted when a

1

court has "overlooked controlling decisions or factual matters that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

3. The Defendant respectfully submits that the Court's Order relies on several premises inconsistent with governing precedent and the record. Specifically, the Court (1) misapplied the *Russell* doctrine and overlooked Second Circuit precedent extending its reasoning; (2) misinterpreted the "plain text of the indictment" whereby it fails to state an offense; (3) improperly relied on materials outside of the four-corners of the indictment contrary to settled law; (4) mistreated wire-fraud allegations under the continuing-offence doctrine which is not applicable in this case; (5) failed to apply the five-year statute of limitations pursuant to 18 U.S.C. § 3282(a) and the failure of the indictment to plead any timely act within this limitation; (6) misused forfeiture allegation of the indictment to cure a constitutional deficiency; (7) Inferred materiality, a distinct and essential element of wire fraud, against controlling precedent; (8) overlooked controlling and binding precedent from the Second Circuit and the Supreme Court.

4. Each of these points constitutes a manifest error of law under Local Rule 6.3 and Rule 57(b). Correcting them will prevent further manifest injustice and ensure adherence to the constitutional limits of federal criminal jurisdiction.

## III.  LEGAL STANDARD FOR REVIEW OF A RULE 12 MOTION TO DISMISS PRE-TRIAL

5. A motion to dismiss an indictment under Rule 12(b)(3)(B)(v) tests only the legal sufficiency of the charging document requiring the court to conduct a searching review of the indictment's text to ensure that all essential elements of the offense are alleged with the requisite specificity. The Court must confine its analysis to the four-corners of the indictment, accept its factual allegations as true, and determine whether those allegations, if proven, state each essential element of the charged offense. *United States v. Sampson*,

898 F.3d 270, 282 (2d Cir. 2018); *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012). The government may not cure omissions or vagueness by reference to discovery or briefing outside the indictment. *United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998). In denying the prior motion, the Court's analysis relied on factual assertions drawn from the Government's opposition papers—material outside the four corners of the indictment. This approach conflicts with *Alfonso* and *Sampson*, which hold that sufficiency must be judged solely from the face of the indictment. Reconsideration is therefore warranted to correct this clear legal error.

6. Where, as here, the defendant asserts constitutional deficiencies under the Fifth and Sixth Amendments, a heightened standard of review applies. The Court must strictly examine whether the indictment itself sets forth every essential element with sufficient factual particularity to provide notice and to bar future prosecution. *Russell v. United States*, 369 U.S. 749, 763–64 (1962); *United States v. Pirro*, 212 F.3d 86, 92–93 (2d Cir. 2000). Missing or implied elements cannot be supplied by inference or construction. The Court's order applied a deferential rather than heightened review, effectively excusing the absence of critical elements such as materiality and specific intent. Under *Russell* and *Pirro*, this constitutes reversible error. When an indictment fails to allege conduct that constitutes a federal offense on its face, dismissal with prejudice is mandatory.

7. This "heightened review" serves as a constitutional safeguard: before compelling a defendant to stand trial, the court must ensure the indictment is facially sufficient, states an offense, and confers jurisdiction. If it fails on any of these grounds, like it does in the present case, dismissal with prejudice is required. In *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) the Court held that "An indictment that fails to allege all of the elements of the offense charged is defective and must be dismissed."

## IV.     THE COURT MISAPPLIED THE RUSSELL DOCTRINE: CONTROLLING CONSTITUTIONAL LAW, NOT AN EXCEPTION

8.  The Court's suggestion that *Russell v. United States*, 369 U.S. 749 (1962), represents a "rare" or "exceptional" case confined to its facts constitutes clear legal error. For more than six decades, *Russell* has remained the controlling constitutional standard for assessing indictment sufficiency under the Fifth and Sixth Amendments and Rule 7(c)(1) of the Federal Rules of Criminal Procedure. Indeed, *Russell* is the single most frequently cited Supreme Court decision in the Second Circuit on this issue, and its rule is codified directly in Rule 7(c)(1), which mandates that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Advisory Committee Notes to Rule 7 expressly identify *Russell* as the constitutional foundation for this requirement.

9.  Accordingly, *Russell* is not a narrow or exceptional decision—it is the bedrock precedent defining the constitutional minimum for every federal indictment. For over sixty years, courts in this Circuit have uniformly applied *Russell* as the governing framework to ensure that each indictment (1) alleges all essential elements of the offense, (2) provides the defendant fair notice of the charge, and (3) protects against double jeopardy. See *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000); *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998); *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). Treating *Russell* as an outlier departs from this settled body of law and constitutes a misapprehension of controlling precedent warranting reconsideration.

10. The Supreme Court in *Russell* held unequivocally that an indictment must do more than merely "track the language of the statute." It must also "set forth the essential facts constituting the offense charged," so that the accused is informed of the specific nature of the allegation and protected from future prosecution for the same conduct. *Id.* at 764–65.

This constitutional principle has been reaffirmed repeatedly and without qualification. See *Hamling v. United States*, 418 U.S. 87, 117 (1974) ("The indictment must set forth the elements of the offense and the essential facts constituting the offense charged."); *United States v. Stringer*, 730 F.3d 120, 124–25 (2d Cir. 2013); *United States v. Basciano*, 763 F. Supp. 2d 303, 330 (E.D.N.Y. 2011). Thus, *Russell* remains the governing rule—not a limited exception—and any contrary interpretation constitutes clear error of law requiring correction.

11. The Court's reliance on *United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013), and *United States v. Yannotti*, 541 F.3d 112 (2d Cir. 2008), to narrow *Russell's* reach was misplaced. Neither decision limits *Russell*; both explicitly reaffirm it. *Stringer* quotes *Russell* verbatim, reiterating that an indictment must contain the elements of the offense, provide fair notice, and enable a double-jeopardy plea. *Yannotti* applied that same standard to a detailed RICO indictment involving numerous predicate acts—circumstances far removed from the present single-count wire-fraud charge, which is devoid of factual context. The Court's interpretation effectively inverted *Russell's* constitutional command by treating its requirements as discretionary rather than mandatory.

12. By declining to apply *Russell's* binding standard—and instead upholding an indictment that omits the factual means, materiality, and purpose elements, including the requisite mens rea and actus reus—the Court departed from controlling law and lowered the constitutional threshold governing all federal prosecutions. Under *Russell* and its progeny, the Indictment is facially insufficient, constitutionally void, and must be dismissed with prejudice. Failure to correct this misapplication would perpetuate manifest injustice and undermine the grand jury's constitutional role.

13. Under *Russell*, an indictment must allege not only the statutory elements of the offense (the "legal framework") but also the essential factual context—the *who, what, when, where,*

and *how*—necessary to (1) inform the defendant of the precise accusation and (2) enable the Court to determine whether a federal crime has been charged. The Indictment here contains a fatally defective "to wit" clause that enumerates no criminal act and is devoid of the factual particulars or statutory elements required under 18 U.S.C. § 1343. It alleges neither who committed what acts, nor when or where those acts occurred, nor how they satisfy the statute's materiality and intent requirements. This omission violates *Russell's* constitutional mandate and renders the Indictment facially invalid and void ab initio.

## V. Tracking the Statute" Is Insufficient When the Statute Itself Omits Essential Element(s)

14. In *Russell v. United States*, 369 U.S. 749 (1962), the Supreme Court held that "it is not sufficient to set forth the offense in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *Id.* at 765. This principle remains the governing constitutional rule for indictment sufficiency and has been reaffirmed repeatedly for more than sixty years.

15. 18 U.S.C. § 1343, the wire-fraud statute, does not satisfy that standard because the statutory text omits a critical element: materiality. In *Neder v. United States*, 527 U.S. 1 (1999), the Supreme Court held that *materiality is an essential element of all federal fraud statutes*, including wire fraud, and must be both alleged in the indictment and proven beyond a reasonable doubt. Because § 1343 does not contain the term "material" or any equivalent concept, an indictment that merely parrots the statutory language fails, by definition, to allege all the elements "fully, directly, and expressly" as required by *Russell*. The Court's order treated the indictment's "tracking of the statutory language" as sufficient, without acknowledging that 18 U.S.C. § 1343 itself omits materiality. This is a clear

misapprehension of controlling Supreme Court precedent—*Russell* and *Neder*—and warrants reconsideration to correct legal error.

16. The indictment here does precisely what *Russell* forbids: it recites an insufficient, formulaic allegation of a "scheme to make false statements … in furtherance of that scheme," but nowhere alleges that any representation was material—that is, capable of influencing the victim's decisions. Under *Neder*, this omission is *fatal*. Courts have long recognized that failure to allege a material element "fails to charge an offense" under Rule 12(b)(3)(B)(v). See *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("An indictment that fails to allege all of the elements of the offense charged is defective and must be dismissed.").

17. Accordingly, even assuming arguendo that the indictment "tracks the statutory language," that is constitutionally insufficient where the statute itself omits an essential element. *Russell* squarely forecloses such reasoning. Because 18 U.S.C. § 1343 lacks any reference to materiality, an indictment that merely mirrors its text can never, standing alone, state a valid offense. This constitutional defect cannot be cured by inference, discovery, or a bill of particulars. As the Second Circuit has made clear, the only lawful remedy for an indictment missing an essential element is dismissal with prejudice.

## VI. FAILURE TO STATE AN OFFENSE - DEFECTIVE "TO WIT" CLAUSE
### A. The "To Wit" Clause Omits Essential Elements of 18 U.S.C. § 1343

18. The charging clause alleges only that Defendant "engaged in a scheme to make false statements, in order to fraudulently obtain money, and sent and received… emails and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme…."

19. This language fails to charge a crime under 18 U.S.C. § 1343 because it omits and misstates multiple statutory elements. 18 U.S.C. § 1343 reaches only those who, having devised or intending to devise a scheme to defraud or for obtaining money or property by means of

false or fraudulent pretenses, transmit or cause to be transmitted a wire communication for the purpose of executing such scheme. Each element, (1) a scheme to defraud; (2) knowing, willful intent to defraud; (3) material misrepresentation; and (4) use of interstate wires for the purpose of executing the scheme, is indispensable. *Russell v. United States*, 369 U.S. 749, 763–64 (1962); *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000). The Court's prior order overlooked that the indictment's "to wit" clause fails to allege several of these essential elements. Under *Russell* and *Pirro*, such omissions are jurisdictional and require dismissal.

**B. "Scheme to Make False Statements" is not a "Scheme to Defraud" and is not a crime.**

20. The indictment alleges only a "scheme to make false statements," which is legally distinct from a "scheme to defraud." The Supreme Court and Second Circuit have consistently held that falsehood alone is insufficient; fraud requires an intent to deceive and to cause the victim to part with money or property. *Neder v. United States*, 527 U.S. 1, 25 (1999); *Carpenter v. United States*, 484 U.S. 19 (1987); *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994); *United States v. Regan*, 103 F.3d 1072, 1079 (2d Cir. 1997). By alleging only a "scheme to make false statements," the indictment omits the core *actus reus* of 18 U.S.C. § 1343 and therefore fails to state an offense.

**C. "To Obtain Money" Without Detail Fails to Allege a Cognizable Property Interest**

21. The indictment's assertion that Defendant acted "to obtain money" fails to specify from whom, how much, or what property interest was involved. Such omissions violate Rule 7(c)(1) and the Fifth and Sixth Amendments, which require an indictment to allege the essential facts constituting the offense. Wire fraud demands a scheme to defraud directed at obtaining money or property through *materially* false representations. *Neder*, 527 U.S. at 25. The Supreme Court has emphasized that "mere recitation of statutory language is insufficient." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). A bare allegation

that the defendant sought "to obtain money," without identifying the victim or property interest, fails to allege a cognizable property right and therefore does not state an offense under 18 U.S.C. § 1343. *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013). The Court overlooked that the indictment fails to identify any specific property interest - an essential component under *Carpenter* and *Stringer*.

### D. "In Furtherance Of" Misstates the Required Actus Reus

22. The indictment compounds its defects by alleging that emails were sent "in furtherance of that scheme."

23. 18 U.S.C. § 1343 requires that each wire be transmitted "for the purpose of executing" the scheme. *Pereira v. United States*, 347 U.S. 1, 8 (1954), held that a wire must be "incident to an essential part of the scheme"—that is, used to execute it. The Second Circuit reiterated in *United States v. Pierce*, 224 F.3d 158, 166 (2d Cir. 2000), that the wire must be used *for the purpose of executing* the fraud, not merely *in furtherance* of it.

24. The phrase "in furtherance of" is a lesser, incidental standard drawn from conspiracy law, not the operative language of 18 U.S.C. § 1343. Substituting it materially alters the statutory element and fails to allege the required *actus reus*, rendering the indictment facially defective. The Court's order accepted this misstatement as immaterial, overlooking controlling precedent in *Pereira* and *Pierce*.

### E. Materiality Is Wholly Absent

25. The "to wit" clause omits materiality altogether - an indispensable element of every federal fraud statute. *Neder*, 527 U.S. at 25. The Supreme Court's recent decision in *Kousisis v. United States*, No. 23-909 (May 22, 2025), reaffirmed that materiality cannot be inferred merely from the word "fraudulent." Because the indictment never alleges that any statements were capable of influencing the victim's decisions, it omits another essential

element and fails to state an offense. The Court's order disregarded *Neder* and *Kousisis*, both of which require express pleading of materiality.

## F. Mens Rea Element Is Missing

26. Wire fraud is a specific-intent offense requiring proof that the defendant knowingly and willfully devised the scheme with intent to defraud. *United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997).

27. The indictment nowhere alleges that Defendant acted knowingly or willfully with such intent. A bare assertion that conduct was "fraudulent" cannot substitute for a pleaded mental state. *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). The omission of willfulness, knowledge, and specific intent means the indictment fails to allege even a cognizable crime under 18 U.S.C. § 1343.

## G. Collective Impact – , Jurisdictional Defects Requiring Dismissal With Prejudice

28. Under Rules 7(c)(1) and 12(b)(3)(B)(v), an indictment that fails to state an offense is jurisdictionally void. *Russell*, 369 U.S. at 770; *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998).

29. To satisfy constitutional standards, an indictment must (i) set forth each essential element, (ii) describe the specific conduct charged, and (iii) enable the defendant to plead double jeopardy. The "to wit" clause fails all three requirements.

30. Because this clause is the only portion that particularizes the charge, its defective language infects the entire count and renders it terminal. *United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012); *Pirro*, 212 F.3d at 92.

31. No bill of particulars, discovery, or trial evidence can cure these constitutional omissions. A prosecution founded on such a defective pleading is void ab initio. *Pirro*, 212 F.3d at 93; *Russell*, 369 U.S. at 770.

Case 1:24-cr-00665-LAP    Document 42    Filed 10/26/25    Page 15 of 27

32. For these reasons, Defendant respectfully submits that the Court's prior ruling overlooked controlling precedent and thereby committed clear legal error. Correction of this error is necessary to prevent manifest injustice. The Court should therefore reconsider its October 14, 2025, Order and dismiss the indictment with prejudice under Rule 12(b)(3)(B)(v), Rule 57(b), and the Court's inherent supervisory authority.

## VII. THE COURT IMPROPERLY RELIED ON MATERIALS OUTSIDE THE FOUR CORNERS OF THE INDICTMENT TO CURE DEFICIENCIES

33. In its Order, the Court concluded that discovery materials, the Government's briefing, and "the record as a whole" provided "adequate notice" and that Defendant suffered "no prejudice." Respectfully, that conclusion conflicts with binding Supreme Court and Second Circuit precedent governing Rule 12(b)(3)(B) motions. On a pretrial motion to dismiss, the Court must accept the facts alleged in the indictment as true and determine only whether those allegations—on their face—state an offense and satisfy constitutional sufficiency. *United States v. Sampson*, 898 F.3d 287, 297 (2d Cir. 2018) ("A court evaluates the sufficiency of an indictment by its four corners and must accept the allegations as true."); *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss."); *Russell v. United States*, 369 U.S. 749, 763–64 (1962). By considering extrinsic materials and adopting a "record-as-a-whole" standard, the Court departed from these controlling precedents. The sufficiency of an indictment must be determined strictly from its face - nothing more, nothing less.

34. The inquiry under Rule 12 is purely facial. The Court may not look to discovery, evidentiary proffers, or the Government's briefing to cure omissions in the charging instrument. Those considerations belong to post-trial review, not to pretrial motions to

Case 1:24-cr-00665-LAP    Document 42    Filed 10/26/25    Page 16 of 27

dismiss. Allowing supplementation of an indictment with facts drawn from discovery or argument would collapse the grand jury's constitutional role and contravene the Fifth Amendment. The indictment must stand or fall on its own four corners. The Court's reference to materials outside the indictment effectively rewrote the charging document post hoc - a practice *Russell* explicitly forbids because it "destroys the significance of the grand jury's constitutional function." *Russell*, 369 U.S. at 770.

35. The Court's reliance on *United States v. Sullivan*, No. S102CR.1144 (BSJ), 2004 WL 253316, at *2 (S.D.N.Y. Feb. 10, 2004),* to suggest that dismissal is unwarranted absent a showing of prejudice, misstates controlling law. *Sullivan* is a non-precedential district court opinion that conflates facial sufficiency under Rule 12 with harmless-error review after trial conviction. It is neither binding nor persuasive where, as here, the defect is structural and constitutional. Under *Russell* and its progeny, prejudice is presumed when an indictment omits an element or fails to provide essential factual specificity. The constitutional harm occurs at the moment of charging, because a defendant deprived of notice cannot prepare a defense or plead double jeopardy. See *Russell*, 369 U.S. at 763–64; *United States v. Pirro*, 212 F.3d 86, 91–93 (2d Cir. 2000); *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013). As *Russell* made clear: "The right to be tried only on charges found by a grand jury is a substantial right which cannot be taken away on the ground that the defendant was not prejudiced." *Id.* at 770. By conditioning dismissal on a showing of prejudice, the Court applied the wrong legal standard and overlooked that prejudice is inherent in a constitutionally deficient indictment.

36. Nor may the Court rely on "the record as a whole" or "materials disclosed to the defendant" to rehabilitate an insufficient indictment. That approach directly contravenes *Russell*, *Alfonso*, and *Sampson*, each of which confines review to the indictment's four corners. A constitutionally valid indictment must, standing alone, allege every essential element,

specify the time, place, and nature of the offense, and provide sufficient factual context to inform the accused of the charge. The "record-as-a-whole" test is drawn from post-trial harmless-error review; it has no application to a facial challenge under Rule 12(b)(3)(B). Applying it here effectively erases the grand jury's constitutional function and substitutes judicial speculation for the charging authority of the grand jury - an outcome the Supreme Court and Second Circuit have unequivocally rejected. By importing a post-trial prejudice standard into a pretrial facial-sufficiency inquiry, the Court misapplied the governing law and deprived the Defendant of his fundamental constitutional protections under the Fifth and Sixth Amendments. Correction of this error is necessary to prevent manifest injustice.

## VIII. THE COURT MISAPPLIED THE CONTINUING-OFFENSE DOCTRINE

37. The Court's Order erroneously characterized wire fraud as a "continuing offense" for statute-of-limitations purposes. That conclusion conflicts with controlling Supreme Court and Second Circuit authority. In *Toussie v. United States*, 397 U.S. 112, 115–22 (1970), the Supreme Court held that the continuing-offense doctrine is to be applied "in only limited circumstances," and only when either "the explicit language of the substantive criminal statute compels such a conclusion" or "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." Nothing in 18 U.S.C. § 1343 meets either condition. The statute defines a completed offense upon the transmission of each wire "for the purpose of executing" a scheme - not on the duration of the alleged scheme itself. The Court's characterization of wire fraud as a continuing offense overlooks *Toussie's* strict limitation of that doctrine and conflicts with 18 U.S.C. § 1343's plain text.

38. Consistent with *Toussie*, the Second Circuit has repeatedly held that each wire transmission constitutes a separate and independently chargeable act, and that the statute of limitations

begins to run from the date of that transmission—not from the lifespan of an alleged broader "scheme.

39. In *United States v. Ben Zvi*, 242 F.3d 89, 97–98 (2d Cir. 2001), the Court held that "each use of the wires constitutes a separate offense." Likewise, in *United States v. Grimm*, 738 F.3d 498, 503 (2d Cir. 2013), the Second Circuit reaffirmed that the wire-fraud offense is "complete when the wire transmission occurs for the purpose of executing the scheme." The Circuit has consistently applied the five-year statute of limitations in 18 U.S.C. § 3282(a) to wire-fraud counts without exception. *United States v. Carolla*, 2003 WL 22938040, at *2 (2d Cir. Dec. 12, 2003)* (affirming dismissal where the charged wire fell outside the limitations period). The Court's treatment of wire fraud as a "continuing offense" conflicts with these controlling Second Circuit holdings, each of which recognizes 18 U.S.C. § 1343 as an act-based, not course-of-conduct, crime.

40. The statutory structure of 18 U.S.C. § 1343 further confirms that Congress intended wire fraud to be an act-based offense. The statute criminalizes a single act—transmitting a wire communication for the purpose of executing a fraudulent scheme—rather than an ongoing pattern of conduct. This design parallels offenses that are complete upon commission of a discrete act (e.g., mailing, transmission, or filing) and contrasts sharply with truly continuing crimes such as conspiracy or escape, which depend on ongoing participation or unlawful presence. As *Toussie* held, even a failure to register for the draft was not a continuing offense because it was complete the moment the omission occurred. Nothing in 18 U.S.C. § 1343's language extends the offense beyond the moment of transmission. Extending the limitations period beyond that date would contravene *Toussie's* command of strict construction and the legislative design of 18 U.S.C. § 1343.

41. The Court's reliance on *United States v. Hoey*, 725 F. App'x 58 (2d Cir. 2018), and *United States v. Rutigliano*, 790 F.3d 389 (2d Cir. 2015), to classify wire fraud as "continuing"

was misplaced. In both cases, the Second Circuit used "continuing" only in the context of venue under 18 U.S.C. § 3237(a), not for statute-of-limitations purposes. *Hoey* merely repeated that limited venue principle; it did not transform the offense for limitations analysis. Equating 18 U.S.C. § 3237(a)'s venue rule with 18 U.S.C. § 3282(a)'s limitation rule constitutes legal error. The two provisions serve distinct purposes and are interpreted under separate doctrines. The Court conflated the venue doctrine under § 3237(a) with the statute-of-limitations framework under § 3282(a), contrary to *Toussie* and Second Circuit precedent.

42. Accordingly, because the indictment aggregates an alleged fifteen-year "scheme" without identifying any discrete, timely transmission within the five-year period, it is time-barred on its face. Under *Toussie*, *Ben Zvi*, and *Grimm*, the limitations clock begins to run with each individual wire. The absence of any timely act renders the indictment defective and requires dismissal with prejudice under Fed. R. Crim. P. 12(b)(3)(B)(v). The Court's misapplication of the continuing-offense doctrine extended the statute of limitations beyond what Congress authorized. Reconsideration is necessary to correct this clear legal error and prevent the unconstitutional prosecution of a time-barred charge.

## IX.    STATUTE OF LIMITATIONS IS FIVE (5) YEARS AND FAILURE TO PLEAD A TIMLY ACT RENDERS THE INDICTMENT TIME-BARRED

43. The statute of limitations for wire fraud under 18 U.S.C. § 1343 is five years pursuant to 18 U.S.C. § 3282(a). Each wire transmission constitutes a separate and completed offense, and the limitations period begins to run on the date of that transmission. In *United States v. Crossley*, 224 F.3d 847, 857 (2d Cir. 2000), the Second Circuit held that "each use of the wires constitutes a distinct execution of the fraud" and that the government must allege at least one such use within the limitations window. The Supreme Court and Second Circuit have repeatedly rejected any theory that a "continuing scheme" can extend or toll the

statutory limit. See *Toussie v. United States*, 397 U.S. 112 (1970); *United States v. Grimm*, 738 F.3d 498, 502 (2d Cir. 2013) ("Wire fraud is complete when the wire transmission occurs; earlier acts cannot revive a time-barred offense."). The Court's order overlooked this controlling authority and improperly treated wire fraud as a continuing offense, contrary to *Toussie* and *Grimm*.

44. In *Grimm*, the Second Circuit held unequivocally that "each use of the wires constitutes a separate execution of the fraud, and the limitations period runs from the date of the last such execution." *Id.* at 502. The Court further explained that "earlier acts outside the period cannot be revived merely by characterizing the offense as part of a continuing scheme." *Id.* at 503. *Grimm* thus squarely forecloses the government's reliance on an amorphous "scheme" to avoid the five-year statute of limitations. To survive such a challenge, the indictment must allege at least one specific wire transmission within the five-year window preceding the indictment's return. In the instant case, the indictment alleges none—not a single transmission or dated act within that window (or at any point). This omission renders the indictment facially time-barred and void. The Court failed to apply *Grimm's* clear rule that each wire must be pled and timely, and that a "scheme" allegation alone cannot toll the statute of limitations.

45. The Second Circuit has consistently reinforced this principle. In *Crossley*, 224 F.3d at 857, the court required the government to "allege and prove a specific wire within the limitations period, as each transmission is a distinct offense." Likewise, in *United States v. Silver*, 864 F.3d 102, 118 (2d Cir. 2017), the court reiterated that "wire fraud is complete when the wire transmission occurs; the statute of limitations runs from that date." These cases collectively establish that an indictment alleging only an open-ended timeframe - such as "from at least in or about 2009 through at least in or about 2023" - without identifying a single dated transmission within the statutory period is facially defective and time-barred

as a matter of law. Since the indictment here fails to allege even one timely wire, it does not state an offense under 18 U.S.C. § 1343 and must be dismissed with prejudice. The Court overlooked *Silver* and *Crossley*, both binding Second Circuit authority requiring that at least one specific, timely transmission be alleged on the face of the indictment.

46. District courts within this Circuit apply the same rule. In *United States v. Rivlin*, 2007 WL 4276712, at *5 (S.D.N.Y. Dec. 5, 2007)*, the court dismissed wire-fraud counts where the government alleged a multi-year scheme but "failed to identify any transmission within the statutory period," emphasizing that "the scheme to defraud is not itself a continuing offense; only the specific transmissions are chargeable." Similarly, in *United States v. Cannistraro*, 800 F. Supp. 30 (D.N.J. 1992), *aff'd*, 999 F.2d 1009 (3d Cir. 1993), the court held that each wire is a discrete act and that an indictment must allege at least one within five years. Here, the government's sweeping allegation of conduct "from 2009 through 2023" and "in the Southern District of New York and elsewhere" fails to allege any discrete act or definite timeframe. This vagueness violates Rule 7(c)(1) and the Fifth and Sixth Amendments, which require that an indictment allege sufficient particularity to (1) inform the defendant of the specific accusation and (2) permit the court to determine whether a federal crime has been charged. *Russell v. United States*, 369 U.S. 749 (1962). Since the indictment identifies no wire transmission - timely or otherwise - it omits the essential "*actus reus*" of 18 U.S.C. § 1343 and is constitutionally void. By overlooking this defect and permitting a time-barred prosecution to proceed, the Court effectively expanded 18 U.S.C. § 3282(a) beyond its statutory limit and deprived Defendant of the protections guaranteed by the Fifth Amendment's Due Process Clause.


**X.    FORFEITURE LANGUAGE CANNOT CURE A CONSTITUTIONALLY DEFECTIVE INDICTMENT**

Case 1:24-cr-00665-LAP    Document 42    Filed 10/26/25    Page 22 of 27

47. The inclusion of forfeiture allegations cannot salvage a constitutionally deficient indictment. Criminal forfeiture is derivative of, and wholly dependent upon, a validly charged and proven underlying offense. Merely identifying purported "proceeds" of an alleged crime does not cure the absence of essential factual allegations establishing that any crime occurred. If the offense is not properly charged, there can be no forfeiture as a matter of law. The Court's order appeared to treat the forfeiture clause as confirming the indictment's validity, overlooking that forfeiture is purely consequential and cannot substitute for a constitutionally sufficient charge.

48. The Supreme Court in *Libretti v. United States*, 516 U.S. 29, 38–39 (1995), made clear that "forfeiture is an element of the sentence imposed following conviction" - a penalty, not a substantive element of the offense. Accordingly, forfeiture provisions are entirely contingent upon a lawful conviction and cannot replace or supplement the factual allegations constitutionally required in the indictment. See also *United States v. Cherry*, 330 F.3d 658, 669 (4th Cir. 2003) ("Forfeiture cannot stand when the underlying conviction is vacated."); *United States v. Bajakajian*, 524 U.S. 321, 333 (1998) (forfeiture "depends upon the commission of a criminal offense"). By implicitly relying on forfeiture language as evidence that an offense was sufficiently charged, the Court departed from *Libretti's* holding that forfeiture is purely derivative and cannot supply missing elements.

49. In the instant case, the indictment's vague reference to forfeiture of "proceeds traceable to the offense" does not identify what conduct generated those proceeds, when it occurred, or how it constituted a crime. The government has alleged neither a valid predicate offense nor the required nexus under Rule 32.2(a) of the Federal Rules of Criminal Procedure, which mandates that a forfeiture allegation "be set forth in the indictment or information and identify the property subject to forfeiture." Because forfeiture is punitive and derivative—not independent—its inclusion cannot cure the indictment's failure to allege a

federal offense or satisfy the constitutional requirements of Rule 7(c)(1), the Fifth Amendment, or *Russell v. United States*, 369 U.S. 749 (1962). The forfeiture clause merely compounds the indictment's defects by referencing the "proceeds of the offense" without alleging that any such offense exists. As a matter of law, a punishment provision cannot validate an otherwise void charging instrument. The indictment therefore remains incurably defective and must be dismissed in its entirety with prejudice.

## XI.    THE COURT IMPROPERLY INFERRED MATERIALITY AND INTENT NOT ALLEGED IN THE INDICTMENT

50. The Supreme Court has made clear that materiality is not an implied concept within "fraud" but a distinct and essential element of the federal wire-fraud statute, 18 U.S.C. § 1343. In *Neder v. United States*, 527 U.S. 1 (1999), the Court expressly held that "the common-law requirement of materiality of falsehood is an element of the federal mail-fraud, wire-fraud, and bank-fraud statutes." *Id.* at 25. The Court explicitly rejected any suggestion that materiality could be inferred from the mere statutory reference to a "scheme or artifice to defraud." Most recently, in *Kousisis v. United States*, No. 23-909 (U.S. May 22, 2025), the Supreme Court reaffirmed that materiality remains the principal limiting element of the federal fraud statutes. The Court emphasized that the government must establish a *material misrepresentation*—a false statement or omission *capable of influencing* the victim's decision to part with money or property. *Kousisis* thus reinforces that materiality must be *specifically alleged and proven* as an independent element, not assumed from generic allegations of "fraudulent conduct." The Court's order inferred materiality from the use of the word "fraud," contrary to *Neder* and *Kousisis*, both of which require that materiality be expressly alleged on the face of the indictment.

51. No controlling precedent authorizes a court to infer materiality from the mere appearance of the word "fraud." *Neder* forecloses that proposition outright. The government must

allege facts showing that the supposed false statements were material to the victim's decision-making process. Absent such an allegation, the indictment fails to state an offense. Any contrary reasoning - that "materiality may be inferred from the term 'fraud'" - is inconsistent with *Neder* and *Kousisis* and constitutes clear legal error. By presuming an unalleged element, the Court effectively amended the indictment - something neither Rule 7(c)(1) nor the Fifth Amendment permits.

52. The Second Circuit has likewise treated materiality as a separate, indispensable element of wire fraud. See *United States v. Rigas*, 490 F.3d 208, 232 (2d Cir. 2007) ("The misrepresentations alleged must be material to the victim's decision."); *United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015) ("Materiality is an element of mail and wire fraud."). None of these authorities suggest that materiality can be presumed or implied from statutory language alone. The Court's order contradicts the consistent Second Circuit authority requiring that materiality be expressly alleged and proven as an element separate from intent or general fraudulent conduct.

53. In its most recent pronouncement, the Second Circuit in *United States v. Chastain*, No. 23-7038 (2d Cir. July 31, 2025), reaffirmed that materiality under 18 U.S.C. § 1343 cannot be presumed or inferred from vague allegations of "fraud," "confidential information," or "unethical behavior." The Court vacated the defendant's conviction because neither the indictment nor the jury instructions alleged or proved that the misappropriated information had commercial value or that the defendant's conduct was capable of influencing the victim's economic decisions. *Chastain* thus aligns squarely with *Neder* and *Kousisis* in holding that materiality must be *specifically pleaded and factually supported*. Without concrete factual allegations showing that the alleged misrepresentation had a natural tendency to influence a decision or affected property with measurable economic value, a wire-fraud indictment fails to state an offense. The Court's decision conflicts with

*Chastain's* clear rule that materiality cannot be inferred from generalized allegations of deceit.

54. In the instant case, the indictment contains no allegation that any statement or act was material to any decision by the alleged victim. Its charging language merely asserts a "scheme to make false statements" and "to obtain money," without alleging how or why those statements were capable of influencing any decision. Such phrasing neither tracks the statutory elements nor satisfies the materiality requirement defined in *Neder* and reaffirmed in *Kousisis*. In effect, the indictment fails to allege any crime at all. Without an express allegation that the purported misrepresentation was material, the indictment fails to state an offense under 18 U.S.C. § 1343 and must be dismissed with prejudice. By inferring materiality and intent not alleged in the indictment, the Court contravened binding precedent and permitted an unconstitutional prosecution to proceed on a facially insufficient charging instrument.

## XII.  THE COURT OVERLOOKED CONTROLLING AND BINDING PRECEDENT FROM THE SECOND CIRCUIT AND SUPREME COURT

55. A district court's reliance on non-binding district-level opinions while disregarding binding precedent from the Second Circuit and the Supreme Court constitutes clear legal error. The judicial hierarchy is unequivocal: district courts are bound by the decisions of their governing Court of Appeals and the Supreme Court on all constitutional and procedural matters. *Hutto v. Davis*, 454 U.S. 370, 375 (1982); *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995).

56. When adjudicating a motion to dismiss an indictment, a court must apply the binding standards set forth in *Russell v. United States*, 369 U.S. 749 (1962); *United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000); *United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998); and *United States v. Sampson*, 898 F.3d 287 (2d Cir. 2018)* - each requiring strict, four-corners

review and holding that essential elements such as materiality and intent cannot be implied or inferred. Substituting non-precedential district-court dicta for these controlling authorities is not a matter of discretion; it is a structural legal error that violates the rule of law, due process, and the mandate of vertical stare decisis. The Court's order relied on non-binding district-court authority while overlooking binding precedent from the Supreme Court and Second Circuit. Such oversight constitutes clear legal error requiring correction under Local Criminal Rule 49.1(d).

57. The Second Circuit has expressly held that district courts "are not free to disregard controlling precedent on issues already resolved by this Court." *United States v. Diaz*, 986 F.3d 202, 210 (2d Cir. 2021). Failure to apply binding appellate and Supreme Court law on indictment sufficiency, statute of limitations, or constitutional pleading standards undermines the uniformity of federal criminal law and the integrity of judicial review. When a district court substitutes local decisions for controlling Second Circuit or Supreme Court authority, it exceeds its authority and commits reversible error. The rule of law demands adherence to hierarchical precedent. Deviation from that command not only undermines the fairness of adjudication but also constitutes manifest injustice requiring reconsideration and correction to preserve legality, uniformity, and the supremacy of binding precedent.

## XIII.  CONCLUSION:

58. For these reasons, and to preserve the constitutional guarantees of the Fifth and Sixth Amendments, the grand jury's charging function, and the integrity of this Court's proceedings, dismissal with prejudice is the only lawful and just remedy. The indictment is facially and jurisdictionally insufficient, the alleged offense time-barred, and the constitutional violations incurable. The Court should therefore vacate its October 14, 2025

Order and enter an order dismissing the indictment in its entirety, with prejudice, under Rule 12(b)(3)(B)(v), Rule 57(b), and the Court's inherent supervisory authority to prevent the continuation of an unconstitutional prosecution.

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that the Court:

1. Grant reconsideration of and vacate its October 14, 2025 Order;

2. Enter an Order dismissing the indictment with prejudice under Rule 12(b)(3)(B)(v) and the Court's inherent supervisory power to prevent unconstitutional prosecutions as that is the only appropriate constitutional remedy, and

3. Grant such other and further relief as may be just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 26, 2025

Respectfully submitted,

Peter Toumbekis, Esq.